### N. B. RIDDLE *v.* CYRUS RATLIFF et al.

The perfecting of incomplete Spanish titles to land in Louisiana, of right belongs to the legislative branch of the Federal Government, and their power to deal with such titles, in their political capacity, and to determine to whose benefit they should inure, is beyond the control of the Judiciary.

In incomplete grants, where the land has been separated from the public domain, the King of Spain had no power, or discretion, which he could lawfully exercise in relation to it, and none passed to the United States. The land was and has remained private property, which no legislation of Congress could affect.

Incomplete titles like settlement and cultivation were mere equities, and the Government had the right to say in what manner they should ripen into perfect titles, and to establish a limit beyond which these equities should cease to have effect. The confirmation was the title, and inured to the benefit of the party to whom it was made. But in cases of complete grants, the confirmation is not the title, but only its recognition, and in ascertaining the rights of parties, it must be laid out of view.

Under the Spanish Government verbal sales of lands might perhaps be shown, but only in the case of actual and continued possession by the purchaser.

APPEAL from the District Court, Seventh District, Parish of West Feliciana. *Sterling,* J. *U. B. Phillips* and *H. C. Hudson,* for plaintiff. *Ratliff,* for defendants.

Rost, J. This is a petitory action.

The plaintiff claims title · under a complete Spanish grant in favor of *Felix Bernard*, bearing date the 18th of June, 1787.

The sale from the grantee, *Bernard*, to *Zachariah Smith*, under whom the plaintiff alleges he holds, has not been produced, and the sale from *Zachariah Smith* to the next vendee, has not been established by legal evidence. But it is shown that in 1826, the land was confirmed to *John Rhea*, as holder of the Spanish grant, and it is urged in behalf of the plaintiff that the confirmation is evidence of the title being in *Rhea*, and that as the chain of conveyances is complete from *Rhea* down to him, his title is sufficiently proved. The District Court sustained that defence on the authority of the case of *Purvis et als.* v. *Harmonson et al.*, 4 Ann. 421. The title in that case was an inchoate Spanish grant, which had not divested the former Government of the fee in the land. The conclusion to which we came was that the whole matter of perfecting incomplete titles to land in Louisiana, of right belonged to the Legislative branch of the Federal Government, and that their power to deal with such titles in their political capacity, and to determine to whose benefit they should inure, was beyond the control of the Judiciary.

In this case there was a grantee, and the land had been separated from the public domain before the change of Government. The King of Spain had no power or discretion which he could lawfully exercise in relation to it, and none passed to the United States under the Treaty. It was and has remained private property, which no legislation of Congress can affect. If there had been no confirmation by the United States, the plaintiff would have been required to trace his title to the original grantee, unless he could hold by prescription. The confirmation leaving the title precisely as it was before, and being merely a recognition of it by the United States, it cannot alter the legal rights of parties claiming under or adversely to that title, or change the law of evidence in relation to it.

The distinction between perfect and inchoate titles has been carefully preserved in the Acts passed by Congress for the adjustment of titles and claims to land in Louisiana. The Act of 1805, which those passed subsequently have followed, provides that every person claiming lands by any complete French or Spanish grant, may, and every person claiming under an incomplete French or Spanish grant, or by virtue of settlement and cultivation, shall deliver to the Register of the Land Office a notice in writing, stating the nature and extent of his claim; thus · making it optional to apply for the confirmation of complete grants, and recognizing their binding force upon the Government without it. The same section requires parties claiming under complete grants, as well as others to which it refers, to deliver to the Register, to be recorded, the original grant or patent, together with the warrant or order of survey, and the plat. The object of this provision was to ascertain which lands had been separated from the public domain by the former Governments, and no penalty is attached to it; while the Act provides that if any person claiming by virtue of any incomplete French or Spanish grant, or under settlement or cultivation, shall neglect to deliver the notice of his claim, and cause the evidence of it to be recorded in the Register's Office, all his rights shall become void, and forever thereafter be barred, and his title shall not be admitted as evidence in any Court of the United States against a title derived from the United States. Statutes at large, page 326.

Incomplete titles, like settlement and cultivation, were mere equities, and the Government had the right to say in what manner they should ripen into perfect titles, and to establish a limit beyond which those equities should cease to have

effect. The confirmation was the title, and inured to the benefit of the party to whom it was made. But in cases of complete grants, the confirmation is not the title, and in ascertaining the rights of parties claiming under them, it must be laid out of view.

It has been urged that at the time the sales to *Zachariah Smith* and his brother are alleged to have been executed, verbal sales of land were authorized, and that there is evidence in the record from which verbal sales may be implied. This might perhaps be the case if actual and continued possession by the purchasers had been shown; but in default of possession, the evidence relied on by the plaintiff to support the alleged sales, is not such as a court of justice can act upon.

The plaintiff has failed to make out his case, and the judgment must be in favor of the defendants for that portion of the land claimed beyond the two hundred and thirty-six arpents and two-fifths, covered by *Bernard's* patent. The plaintiff claims under it as far as the back lines of the tracts fronting on the Mississippi River; but he has failed to show the existence and position of that line at the time the patent issued, while it is proven by the defence that the front tracts were not granted for eight or ten years after its date. There was no fixed and known boundary of the front tracts at the date of the grant, by which the quantity it specifies can be controlled. The patent itself is silent in relation to that boundary, and only specifies the front with such a depth between parrallel lines as will give two hundred and thirty-six and two-fiths superficial arpents. The defendants are entitled to retain all beyond that quantity.

For the land covered by *Bernard's* patent, we can make no final disposition of the case in favor of the defendants. It is now as it was in the case of *Williams et als.* v. *Riddell*, an outstanding title, and as such a bar to his recovery. The present defendants in interest were plaintiffs in that case, and had sued *Riddell* for the same lands. *Riddell* set up the outstanding title of *Bernard*. There was judgment for the plaintiffs in the District Court, and they caused themselves to be put in possession under it. Upon a devolutive appeal subsequently taken, the judgment was reversed, and *Riddell* ordered to be quieted in his possession to the full extent covered by the outstanding title. Why *Riddell* has not caused the judgment to be executed, has not been explained; but his rights are not affected by the delay; no length of time can deprive him of the writ of possession to which the judgment entitles him. This is his only remedy.

It is ordered that the judgment in this case be reversed.

It is further ordered, that for the two hundred and thirty-six arpents and two-fifths, of the land covered by the patent of *Felix Bernard*, there be judgment against the plaintiff as of non-suit.

It is further ordered that the defendants be quieted in their possession and title against the claims and pretensions of the plaintiff, to all the land claimed by him, situated between the prolongation of the side lines of the *Bernard* grant, beyond the extent for which it calls, and the rear line of the grants on the Mississippi River as the said line now exists.

It is further ordered, that the plaintiff pay costs in both Courts.